Jane DOE (whose true name is confidential), Personal Representative of the Estate of John Doe (whose true name is confidential), deceased, Plaintiff,

v.

The AMERICAN NATIONAL RED CROSS, d/b/a American Red Cross Central South Carolina Chapter S.C. Regional Blood Services, Defendant.

Civ. A. Nos. 3:91–0039–19, 3:91–0040–19.

United States District Court,
D. South Carolina,
Columbia Division.

March 31, 1992.

Charles L. Henshaw, Jr., Benjamin M. Mabry, Columbia, S.C., for plaintiff.

Stephen G. Morrison, Stuart M. Andrews, Jr., James F. Rogers, Columbia, S.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SHEDD, District Judge.

These are companion blood contamination cases.[1] In both cases, plaintiff alleges that her husband received a transfusion of HIV-contaminated blood in 1984 during surgery at Baptist Medical Center in Columbia. The blood was processed and supplied to the hospital by defendant. Plaintiff's husband died in December 1987 and an autopsy revealed that plaintiff's husband had the AIDS virus. Plaintiff contends that defendant was negligent in its processing of the blood used for the transfusion.

Currently before the Court are plaintiff's motion to compel defendants to respond to interrogatories and defendant's motion for a protective order safeguarding it from disclosing the identity of the blood donor suspected of transmitting the AIDS virus to plaintiff's husband. After carefully reviewing the arguments presented and the controlling legal authorities, the Court finds that defendant's motion should be granted and plaintiff's motion should be denied.

I

During discovery plaintiff served upon defendant written interrogatories, four of which are as follows:

1. Identify the blood donor whose blood donation was labeled blood number 36K04689, who is known to have tested positive for HIV.

3. If the donor referred to in interrogatory 1 above is alive, or is not known to be dead, and the defendant does not know the current address of said donor, identify all persons who know or may have reason to know the current address of said donor.

4. State the name and addresses of all persons known to you to be witnesses concerning the facts of this case and indicate whether or not written or recorded statements have been taken from the witnesses and indicate who has possession of such statements.

5. Set forth a list of photographs, plats, sketches, or other prepared documents in your possession or the possession of your attorneys or attorney that relate to the claims or defense in this case.

Defendant objected to Interrogatories 1 and 3 [2] asserting:

The Red Cross objects to this interrogatory on the grounds of undue burden, annoyance, embarrassment, and oppression, as well as on grounds that the request is not reasonably calculated to lead to the discovery of admissible evidence. The Red Cross also objects to this interrogatory on the grounds that the identity of the implicated blood donor is protected by rights of privacy under the United States and South Carolina constitutions, state statutory privileges, and public policy interests.

Defendant responded in part to Interrogatories 4 and 5, but objected in part asserting that the interrogatories called for it to speculate as to what all of the facts, claims, and defenses involved in the case are or may be.

---

1. C.A. No. 91–0039–19 is a wrongful death action and C.A. No. 91–0040–19 is a survival action.

2. Defendant's objection to Interrogatory 3 specifically referred to the stated objections in Interrogatory 1.

In response to defendant's objections, plaintiff moved to compel defendant to respond to these interrogatories. Defendant responded by moving for a protective order to safeguard the identity of the implicated blood donor ("the Donor") [3] based essentially on the grounds set forth in its objection to Interrogatories 1 and 3. Defendant also restated its objections to Interrogatories 4 and 5 in its motion.

Two separate discovery issues are before the Court: whether defendant should be required to disclose the identity of the Donor, which will resolve the motions with respect to Interrogatories 1 and 3; and whether defendant should be required to further respond to Interrogatories 4 and 5. The Court will address each issue separately below.

II

Initially, the Court will address whether defendant must disclose the identity of the Donor. Defendant has raised several grounds in support of its position that it should not be required to disclose the Donor's identity. The Court need not reach each of these grounds, however, because the Court finds that defendant's assertion that the Donor's identity is privileged information under S.C.Code Ann. § 44–29–135 is dispositive. Based on this privilege, the Court will deny the motion to compel and grant the motion for a protective order.

A.

The pertinent facts concerning this motion may be summarized as follows.[4] In January 1988, defendant was notified by Baptist Medical Center that plaintiff's husband developed AIDS and died following transfusions of blood provided by defendant. Defendant conducted a "lookback"

investigation and determined that the blood components of twenty-four donors were transfused into plaintiff's husband. Under defendant's standard operating procedure for conducting lookback investigations, defendant examined its records to determine whether any of the twenty-four donors whose blood or blood components were implicated in the transfusion had tested HIV negative more than six months following the implicated donation. Of these donors, sixteen had tested HIV negative when subsequently donating blood to defendant. Again, pursuant to its standard operating procedures, defendant attempted to contact by mail (last known address) the remaining eight donors who had not been tested for HIV and to have them report to Ms. Covington for an HIV test. Of these eight donors, seven subsequently reported and tested negative for HIV. The Donor did not respond to this letter.

After receiving no response from the Donor, whose HIV status was unknown at that time, Ms. Covington attempted to contact the Donor by calling the phone number he had provided during his 1984 implicated donation. Ms. Covington learned during this call that the Donor no longer resided at the address that he had given to defendant and that he had not given any forwarding address, telephone number, or other means by which defendant could locate him. Ms. Covington then requested the assistance of DHEC. On August 25, 1988, DHEC officials confirmed that it had tested the Donor for HIV and that the test results were positive. DHEC released this information to defendant based on its belief that the release was justified under Section 44–29–135(c) and (d) because it would not be released to third parties, and because it would be used exclusively to ensure the control and treatment of a sexually trans-

---

**3.** The Court's use of masculine pronouns to refer to the Donor in this Opinion is for the purpose of clarity only and in no way indicates that the Donor is actually male.

**4.** Defendant has submitted the affidavits of G. Dianne Covington, the manager of defendant's medical records, and Dr. Jeffrey L. Jones, the State Epidemiologist for the South Carolina Department of Health and Environmental Control ("DHEC"). Ms. Covington's duties include the

coordination of "lookback" investigations to determine the HIV status of blood donors whose donations have been implicated in transfusion-associated infections. Dr. Jones's duties include the development and enforcement of DHEC's regulatory program concerning the surveillance, investigation, and prevention of the spread of communicable diseases. The factual summary in the text is taken from these affidavits.

mitted disease and to protect the health of recipients of the Donor. DHEC would not have released any information concerning the Donor for purposes other than those set forth in Section 44–29–135.

DHEC has historically taken the position that information and records pertaining to sexually transmitted diseases, whether in DHEC's control or released pursuant to Section 44–29–135, cannot be disclosed in personal injury proceedings because such a release is not authorized by the statute. Defendant has not communicated with the Donor since August 1984 and defendant did not learn, from DHEC or otherwise, the Donor's address or any specific information concerning his whereabouts.

### B.

In 1978, the South Carolina General Assembly, finding that "an emergency situation exists requiring the protection of the confidentiality of venereal disease records and further that failure to protect such confidentiality threatens the continued effectiveness of the venereal disease control program in the State," enacted Section 44–29–135. *See* 1978 S.C. Acts No. 542. Section 44–29–135, which is part of the State's overall legislative program relating to contagious and infectious diseases, specifically sexually transmitted diseases, provides:

All information and records held by the Department of Health and Environmental Control and its agents relating to a known or suspected case of a sexually transmitted disease are strictly confidential except as provided in this section. The information must not be released or made public, upon subpoena or otherwise, except under the following circumstances:

(a) release is made of medical or epidemiological information for statistical purposes in a manner that no individual person can be identified: or

(b) release is made of medical or epidemiological information with the consent of all persons identified in the information released;

(c) release is made of medical or epidemiological information to the extent necessary to enforce the provisions of this chapter and related regulations concerning the control and treatment of a sexually transmitted disease;

(d) release is made of medical or epidemiological information to medical personnel to the extent necessary to protect the health or life of any person; or

(e) in cases involving a minor, the name of the minor and medical information concerning the minor must be reported to appropriate agents if a report is required by the Child Protection Act of 1977. No further information is required to be released by the department. If a minor has acquired Immunodeficiency Syndrome (AIDS) or is infected with Human Immunodeficiency Syndrome (HIV), the virus that causes AIDS, and is attending the public schools, the superintendent of the school district assigned to the school the minor attends must be notified.

The General Assembly has statutorily vested DHEC with the authority to promulgate regulations to carry out the purposes of Section 44–29–135 and other laws dealing with sexually transmitted diseases. S.C.Code Ann. § 44–29–130 (1990).[5] Pursuant to its statutory authority, DHEC has promulgated Regulation 61–21G(2)(d) which provides:

If a person infected with HIV, Hepatitis B or syphilis informs the Department [DHEC], or the Department learns, that he/she has, during a period of probable infection, donated or sold blood, semen, tissue, organs or other body fluids determined to be infectious by the Department, the Department may disclose or release the name of the donor only to the entity which collected the infected blood or body product. The information may be given to the collecting entity to protect the recipient and/or the blood or body product supply. *The entity which*

---

**5.** Section 44–29–130 provides that DHEC "shall promulgate regulations necessary to carry out the purposes of Sections 44–29–60 to 44–29–140, other than Section 44–29–120.... All regula-

tions so made are binding upon all county and municipal health officers and other persons affected by Sections 44–29–60 to 44–29–140."

*collected the blood or body product must not release to any other person the information identifying the donor provided by the Department and such information must be kept strictly confidential.*

S.C.Reg. Vol. 15, Issue 5 (May 24, 1991) (emphasis added). Any person who violates this regulation "is guilty of a misdemeanor and, upon conviction, must be fined not more than two hundred dollars or be imprisoned for not more than thirty days." S.C.Code Ann. § 44–29–140.

The clear intent of the General Assembly in enacting Section 44–29–135, and of DHEC in promulgating Regulation 61–21G(2)(d), is to protect the identity of persons having the HIV virus or other sexually transmitted diseases [6] so that two important interests may be best served. On the one hand, these enactments strive to protect the privacy interests of those persons having one of these diseases.[7] On the other hand, by protecting those individuals' privacy, these enactments serve the state's interest in "encouraging victims [of sexually transmitted diseases] to seek help voluntarily and to give honest responses to screening questions," *Doe v. American Red Cross Blood Servs., S.C. Region,* 125 F.R.D. 646, 651 (D.S.C.1989) (unrelated case), thereby promoting the overall health of the citizens of South Carolina. Only by maintaining the identities in strict confidence, as Section 44–29–135 and Regulation 61–21G(2)(d) purport to do, can these two interests best be served.

## C.

■ With this backdrop in mind, the Court must determine whether defendant may properly assert grounds of privilege under Section 44–29–135 in order to refrain

from disclosing the identity of the Donor. The Court notes that in civil matters such as this one which are grounded upon state law, evidentiary privileges are determined in accordance with state law. *Fed.R.Evid.* 501. Under South Carolina law a matter is privileged if it "is not intended to be introduced into evidence and/or testified to in Court." *South Carolina State Highway Dept. v. Booker,* 260 S.C. 245, 195 S.E.2d 615, 619 (1973).

■ Section 44–29–135 clearly limits the release of all information and records held by DHEC and its agents relating to a known or suspected case of a sexually transmitted disease to five specific circumstances, none of which allows for the information to be released for the purposes of litigation.[8] These limitations apply even when the information is requested under subpoena. Therefore, it is abundantly clear that by enacting Section 44–29–135, the South Carolina General Assembly intended for "[a]ll information and records held by [DHEC] and its agents relating to a known or suspected case of a sexually transmitted disease" to be privileged matter. Plaintiff concedes this fact, but argues that this privilege exists only in favor of DHEC and its agents, and not to other persons or entities that receive authorized information from DHEC. The Court cannot agree with plaintiff's position.

■ "It is well settled that while the Legislature may not delegate its power to make laws, in enacting a law complete in itself it may authorize an administrative agency or board 'to fill up the details' by prescribing rules and regulations for the complete operation and enforcement of the law within its expressed general purpose." *Heyward v. South Carolina Tax Comm'n,*

---

**6.** The Court recognizes that the HIV virus may be transmitted in ways other than by sexual transmission. However, as noted, Section 44–29–135 (and Regulation 61–21G(2)(d) promulgated thereunder) was enacted to address the confidentiality of information pertaining to sexually transmitted diseases.

**7.** The privacy interest is best illustrated by the fact that plaintiff has brought this lawsuit in a confidential manner.

**8.** The General Assembly has, however, authorized the release of this information under court order for law enforcement purposes. S.C.Code Ann. § 44–29–136. The General Assembly has also exempted physicians and state agencies who identify and notify a spouse or known "contact" of an HIV–infected individual from liability for damages resulting from the disclosure. S.C.Code Ann. § 44–29–146.

240 S.C. 347, 126 S.E.2d 15, 19–20 (1962). A duly promulgated regulation has the force and effect of statutory law and becomes an integral part of the enabling statute. *Pritchett v. Lanier*, 766 F.Supp. 442, 447 (D.S.C.1991); *Tant v. Dan River, Inc.*, 289 S.C. 325, 345 S.E.2d 495, 496 (1986). DHEC, which is the agency charged with the administration of Section 44–29–135, has promulgated Regulation 61–21G(2)(d), which prohibits a blood collection agency such as defendant from releasing "information identifying the donor provided by [DHEC]" and which requires that "such information must be kept strictly confidential." DHEC promulgated Regulation 61–21(G)(2)(d) under the authority vested in it by the General Assembly in Section 44–29–130; thus, Regulation 61–21G(2)(d) is an integral part of South Carolina law. Under these authorities, the Court finds that the privilege created by Section 44–29–135 extends to defendant, as an authorized recipient of information identifying the identity of an HIV–infected donor.[9]

Furthermore, the Court finds that although Section 44–29–135, unlike Regulation 61–21G(2)(d), does not expressly state that the privilege extends to individuals or entities other than DHEC and its agents, the legislative intent of this section, as discussed in Part II–B of this Opinion, clearly is to extend the privilege to authorized recipients.[10] If the privilege did not extend to authorized recipients of information, then the state's policy of encouraging infected individuals to identify themselves to DHEC voluntarily and in confidence would be frustrated since those individuals would naturally be less likely to identify themselves if they believed that DHEC would then release the information to an entity such as defendant, who would not be subject to the same confidentiality requirements. Given the various interests at stake, the General Assembly, by subjecting DHEC to strict confidentiality requirements while at the same time authorizing limited release of confidential information in certain circumstances, clearly intended for the information released by DHEC to remain confidential.

Furthermore, DHEC's construction of Section 44–29–135, as expressed by Regulation 61–21G(2)(d) and by the testimony of Dr. Jones, is itself entitled to "most respectful consideration" and should not be overruled absent compelling circumstances. *Jasper County Tax Assessor v. Westvaco Corp.*, 409 S.E.2d 333, 334 (S.C.1991). As is obvious from the Court's determination of the intent of the General Assembly, the Court finds that there are no compelling circumstances to overrule DHEC's construction of Section 44–29–135.[11]

### D.

Rule 26(b)(1), which defines generally the scope of discovery, states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." Rule 26(c) authorizes the Court, in appropriate circumstances, to issue a protective order which limits, in whole or in part, discovery related to a particular matter. Because the Court finds that information in defendant's possession relating to the identity of the Donor is privileged,[12] the Court shall order that defendant is protected from disclosing such information, and

---

9. Plaintiff asserts that South Carolina only recognizes three relation-based privileges: attorney/client, priest/penitent, and husband/wife. While plaintiff is correct, the Court notes that the privilege at issue in this case is not based on the relation between DHEC and defendant but, instead, is based on the nature of the information itself.

10. In South Carolina, the cardinal rule in construing a statute is to ascertain and effectuate the intent of the legislature. *Burns v. State Farm Mut. Auto Ins. Co.*, 297 S.C. 520, 377 S.E.2d 569, 570 (1989).

11. The Court recognizes that in *Doe* (unrelated), then District Judge (now Circuit Judge) Hamilton found that the privilege does not extend to anyone other than DHEC and its agents. 125 F.R.D. at 651. That decision, however, was decided prior to the promulgation of Regulation 61–21G(2)(d).

12. Plaintiff argues that defendant, under its own policies, was required to locate the Donor once his blood was implicated and that defendant had sufficient information to locate the Donor. The Court finds little relevance in these facts, even assuming their truth, since the fact re-

shall deny plaintiff's motion to compel responses to Interrogatories 1 and 3.

### III

As noted, plaintiff has also moved to compel responses to Interrogatories 4 and 5. These interrogatories are, as plaintiff asserts, standard interrogatories under the South Carolina Rules of Civil Procedure. *See S.C.R.Civ.P.* 33(b). Defendant has responded in part to these interrogatories, but has objected to "being improperly placed in a position of anticipating the factual issues and legal theories plaintiff may formulate during the course of this complex medical malpractice litigation." *Def. American Red Cross's Mem. of Points and Auths. in Supp. of Its Mot. for a Prot. Order and in Opp'n to Pl.'s Mot. to Compel,* p. 37. While these interrogatories may be interpreted differently in state court, the Court is satisfied that defendant has fully responded to the extent required under the Federal Rules. The Court will therefore deny plaintiff's motion to compel responses to Interrogatories 4 and 5. If plaintiff desires further information from defendant, then she may serve additional interrogatories which are more specific in scope.

### IV

IT IS THEREFORE ORDERED that defendant's Motion For A Protective Order be GRANTED and that plaintiff's Motion To Compel be DENIED. The parties are advised that all discovery must be completed no later than May 1, 1992, and all motions other than those relating to the admissibility of evidence at trial must be filed no later than May 18, 1992. These cases are subject to being called for trial at the Court's June 1992 term.

AND IT IS SO ORDERED.

mains that only through DHEC did defendant learn the HIV status of the Donor. Practically speaking, plaintiff is not merely interested in the identity of the Donor itself. Rather, plaintiff's interest in the Donor's identity hinges upon the Donor's HIV status, which is privileged information. Although defendant's apparent acknowledgement that DHEC confirmed the positive HIV status of the Donor may itself be a disclosure of privileged information, that is no reason for the Court to order further release of privileged information.